Good morning, your honors, and may it please the court. My name is Ron Sung with the Federal Public Defender's Office of Nevada, and I represent Jesus Flores. I'd like to reserve two minutes, please. Counsel's concession during opening statements in Mr. Flores' case was unreasonable and lacked any strategic value. Counsel's goal for the concession was to build credibility to contest the other charges, but counsel effectively waived the proverbial white flag, abandoned her client, and aided the State against her client's interests. Counsel recited the DA's opening statements and agreed with their factual narrative. This, your honor, was a chronic violation. Counsel surrendered her client's case to the extent that the State could have just sought a directed verdict after opening statements. Counsel Could I ask you about that? So it seems like in the opening statement, defense counsel arguably just described what the witnesses would say, but that doesn't necessarily mean that the witnesses needed to be believed. So why are you interpreting it as actual evidence? Like, first of all, that there would be a, that there was a gun rather than just a witness would say there was a gun, and then how could that even be, how could you move for a directed verdict as if the opening statement was evidence anyway? Well, your honor, you're right that opening statements are just arguments, but so are closing statements. And in this Court found in U.S. v. Swanson that I cited, that was a closing arguments case. Counsel in that case conceded that her client was guilty of the one-out-of-the-one charge. This Court found in Swanson that there was a chronic violation because counsel affirmatively aided the prosecutor in her efforts to persuade the jury. And we have the exact same thing here. We have an opening statement in which counsel conceded all the legal and factual grounds needed to convict her client of all the charges. Well, first of all, you have to think that the statement that you'll hear that there was a gun means there was a gun. So that's the first part of my question. The second part is, even if there was a gun, there are all these other elements of kidnapping. I mean, it could allow the jury to convict on all the counts, but it doesn't require it because we have to get into other things like was this beyond the robbery or not and other issues that the jury would have to still decide, right? So if I'm understanding your question, Your Honor, I think it's important to note that if the question is basically like why were the counsel statements like they're not facts, right? Is that what you're saying? Well, let's go one at a time. Okay. The first thing is, when the counsel said you will hear that there was a gun, why does that mean that the jury has to find, as a matter of fact, that there was, rather than maybe that the victim just was confused about whether there was a gun, but he'll say there was, and then we'll attack that? Well, for one, Your Honor, they never really questioned the honesty or the credibility or the memory of the victim. And second, there are — Well, I think they kind of did. They said no gun was ever recovered. I mean, weren't they trying to undermine whether there really was a gun? Sure, Your Honor. And I can get to that. And then — but the other thing is, like, they're agreeing — the trial counsel is literally agreeing with the factual narrative of the State, right? And so you have both sides agreeing to this narrative, and that's what is the chronic violation. Wait. What's the agreeing part? It's agreeing. I'm still trying to understand. How was counsel doing that? Right. So they agreed on several key facts. One was that there was a gun. Two, that Mr. — the co-defendant, Martinez, stabbed the victim, and he had a knife pointed at the victim. Another factual concession was that Mr. Flores tied up the victim, that when he left to go to the ATM, the victims were — I'm sorry, the defendants or the co-defendants were threatening the victim. All these factual concessions satisfied all the elements for the other crimes. So we can just talk about each one. Battery, for example, that was one of the crimes that they wanted to contest, or that trial counsel wanted to contest. Well, we know the strategy for that, because during closing arguments, trial counsel stated that Mr. Flores wasn't guilty because Flores didn't know about that happening. But by conceding to the conspiracy account for the robbery, counsel rendered Mr. Flores vicariously liable for the actions of the co-defendants for all general intent crimes. Battery is a general intent crime. And worse yet, she specifically conceded that there was a stabbing by the co-defendant, Martinez. So after the — after that, there's — after that concession, there's literally nothing to talk about with the Battery. Kidnapping. Trial counsel specifically wanted to challenge the kidnapping. It was the most serious crime. It was the only felony-A crime in this of, like, three separate counts of kidnapping. She specifically stated that Mr. Flores took the victim's ATM cards, and while he was out at the ATM, the co-defendants were threatening the victim, right? So that's one count. That's one act of kidnapping. Second — But if he didn't know about that, I mean, wasn't part of — Right. He didn't know about that. He had no — so that's why counsel had less reason to concede, right? She had — Mr. Flores had no idea about the threats if he was gone. Second, she conceded that Mr. Flores was the one that drove the victim and the two other co-defendants to the ATM, and that while he was in — while they were in the car, co-defendant Martinez threatened the victim with a knife and stabbed him. I mean, Mr. Flores had no idea about this. She could have argued that he had no idea and that he was not part of any of this. Let me ask you, if the Court agrees that Chronic's per se prejudice rule should have applied in this case, what's your best argument, what's the authority you would cite us to, to support the assertion that the Supreme Court's decision was, and I'm going to quote the language, contrary to or an unreasonable application of U.S. Supreme Court precedent as required by AEDPA? Well, Your Honor, there is no other Supreme Court decision on Chronic, but recently in 2019 — And don't we — don't we need that? I mean, don't we need to have a specific case that this decision was contrary to, to be able to say that the Supreme Court's decision was unreasonable? Well, Your Honor, the Chronic case does cite two examples of chronic violations, one being the abandonment of — abandonment of client during a critical stage of the proceedings, and a second example being failing to subject the State's case to any meaningful adversarial testing, right? And we have both of that from the concession, right? I would say opening statements is a critical period. She abandoned him. She failed to subject the State's case to any meaningful adversarial testing because she agreed with the narrative and agreed to all the facts needed. So to answer your question, yes, Your Honor, the U.S. Supreme Court — I'm sorry — the U.S. Supreme Court has never had a chronic violation case, but this is a perfect example of one that should be. I guess I'm still struggling, though, with how you think that she actually abandoned all the elements, because she was arguing, as I understood it, that he didn't know about the stabbing, he — that he didn't know what they did at the house or home while he went to the ATM. And it seems like there was the argument that the — taking him to the ATM was — didn't really increase the risk to him, was incidental to the robbery — was part of the robbery and really didn't add kidnapping. So I don't see how he necessarily would have been convicted of kidnapping if the jury agreed with the arguments that defense counsel was making. Well, Your Honor, just like you said, she already laid out all the facts that she didn't dispute, all the facts about the kidnapping. So once you lay out all these concessions in your opening, it's pretty useless to go during closing and say, well, my client didn't actually do this, my client didn't know about this. She could have just waived her opening statements, Your Honor, and just let the concession stand. Her concession was based — should have just been, well, we conceded to the robbery — I'm sorry, the — the count one burglary without the firearm enhancement. Did you have a question? Yeah. Can you — don't tell me what she could have done. Tell me what she did that tells us that she conceded that. I guess that's — that's what I need you to be clear on. What was it that she conceded on, for example, on the — on the kidnapping? Sure. Your Honor, as I laid out just now in the opening — in my opening brief, she conceded three factual statements for kidnapping, first being that Mr. Flores took the ATM cards and went to the ATM. And while he was doing that, the co-defendants were actively threatening the victim. But if we stop you there, if she says he didn't know about that, then why would he be guilty of kidnapping for that? Okay, Your Honor, it's — it's unclear whether — but in her opening statement, she never said whether our guy knew about that or not, right? So she didn't make that clear. She just said, oh, the co-defendants are doing this, implying that our guy was also in knowledge about that because she also conceded that he was part of a conspiracy, right? Count five was a conspiracy. She conceded that up front when she didn't need to. The second kidnapping incident was him, Mr. Flores, driving the vehicle. She had no need to concede that. She had no need to concede that. Well, some of the things she probably had to concede because they're true. I mean, the really big problem here is that the facts were very bad for her to figure out how to have any sort of strategy at all, right? I mean, I'm not sure how they could have possibly said he didn't drive the car. Well, if we're going to the prejudice argument, Your Honor, I would just say that trial counsel failed to impeach the overall credibility of the elderly victim. And that's because counsel agreed with the narrative, right, that the State set out in opening statements. Well, this is my first question I don't really think you've answered, which is when she says, you will hear that there was a gun. But then in trial, she tries to say, but there really wasn't a gun. No gun was recovered. How is that statement, you will hear that there's a gun, actually a concession to there being a gun? Well, Your Honor, I don't think it's as clear as you say. It's like you'll hear that all these facts occurred, right? And that's why does she even need to say you will hear? And before she says that, she says the facts are going to be difficult to listen to, right? I mean, she characterizes these statements as facts that she is about to relay about the crime. And then she says this language, I think, that my colleagues are talking about, what you're going to hear during, you know, now what are you going to hear during this trial, question mark. But the statement before that is the facts are going to be difficult to listen to. And then she recounts these facts, including many facts that are actually not related to the pled counts, correct? Correct. The canvas itself. So, yeah, it's hard to distinguish when you're reciting the state's opening statements. There's just no need for that, Your Honors. And I would just like to say for if we're talking about the prejudice, right, there was never an attempt to highlight the victim's inconsistent and somewhat nonsensical statements that he made between his 911 voluntary statement and preliminary hearing. I want to list three of them. For example, firearm. There was never a gun, right? Police never recovered one. And the victim actually stated he stared at the gun for like 45 minutes. He said the lights were on. He said he had his glasses on, and yet he couldn't identify the color of the gun. He didn't really. They asked him if it was a fake or real gun. He said, I couldn't tell. They asked him if it was a metal or plastic gun. He said, I couldn't tell. Why wasn't that a strategy? Why wasn't that a strategy that they could have employed? Having had many victims where I'm cross-examining them, if you go sometimes too hard on a victim, that could turn the jury against you very bad. Why wasn't that, for example, a strategy that he could have or that she could have been taking? Because, and I guess that's the whole point of the concession. This concession put her on the path of trial counsel, on the path that she had already agreed with all the factual allegations. Right, but why wasn't that perhaps a strategy that she took? Because that strategy lacked any strategic value. So, for example, on the battery, I listed out like by conceding to the conspiracy and conceding to the factual allegation that Cody. No, but I thought your argument was that she could have been cross-examining this person much better or something to that effect. I mean, but why wasn't the strategy that she took, which was sort of with, you know, velvet gloves trying to treat this person, because you don't want the jury to turn around and and hate you for what happened. Well, I would just say she couldn't cross-examine the victim on all these things because she had already agreed. There was a gun, right? So all this talk about there being no gun, she conceded during opening statements that there was a gun. And, Your Honor, all these things that trial counsel did, this was an abandonment of her client. She aided the State. She firmly aided the State in their case against the client. And after the concession, the question is, what could she have possibly done? And the answer is nothing. There was nothing else to discuss after the concession. And with that, Your Honor, I would like to reserve the remainder of my time. Thank you. Good morning, Your Honors. My name is Michael Bongard. I'm with the Nevada Attorney General's Office, and I represent Respondent William Gitter in this matter. Overwhelming evidence of guilt usually means that a petitioner cannot meet the standard for demonstrating prejudice based upon counsel's error. My opponent recognizes that fact, so he has to jump through the only hoop that he can take to try to convince this Court that there's presumed prejudice based upon chronic. He cited one case and mentioned it to this Court, Swanson v. United States, a case where this Court found prejudice under chronic. However, that's the only case he can cite that actually meets the definition of chronic. In the court, chronic said that counsel ceases to function as appointed counsel when they completely abandon their client. And what do we have in Swanson? We have complete abandonment. The statement made by counsel in Swanson was during closing argument, after the jury heard the evidence, after the jury heard instructions that said they have to base their finding of guilt not on anything counsel says, because statements of counsel aren't evidence. Evidence consists of testimony of the witnesses, physical evidence that's introduced, any type of inferences that can be drawn from that. You don't have that in the opening statement. You haven't even had one fact placed before the jury. Contrary to what my opponent says, at that point, if there was a motion for directive verdict, it has to be granted in favor of Mr. Flores because there was no evidence presented yet. The district court correctly found that chronic doesn't apply. The district court cited this court's case in U.S. v. Thomas, not for the standard that it's constitutional law provided by the U.S. Supreme Court that provides the basis for finding whether it was reasonably or unreasonably applied, but rather for the fact that it aided the court in determining that chronic didn't apply because, in that case, you didn't have total abandonment. You had an attorney that was faced, maybe not with the same perils, but certainly very similar perils as attorney in this case, and they decided to press for credibility with the jury, fight for the charges that there was weak evidence on, or ask counsel in. What legitimate legal strategy could there have been for Flores' counsel to go through and make statements that were essentially factual admissions for claims that were not the claims or the charges that were pled? I'm really struggling to understand what legal strategy could even remotely be reasonable for his counsel to do that. Your Honor, I will concede one thing. I will concede that defense counsel in this case didn't give the best opening argument under the facts and circumstances. However, as you press my opponent during questioning, she didn't concede those facts. She said you will hear facts. She prefaced them. No, no, no. Before that, she said these facts are going to be difficult to listen to. Then she asked a question. What facts are you going to hear today, question mark. Then she goes through all of these facts that are, in my view, you know, cannot attach to any legitimate legal strategy. Then at the end, again, she says these are admissions or, you know, he, I can't remember the exact language. Let me find it here. One second. Let me get to it. Are you looking at the opening, Your Honor? Yeah, I'm looking at the opening statement, and I was just here, but I've lost it. Okay. The facts are going to be difficult to listen to, but we ask you listen carefully. But what are you going to hear during this trial, question mark, goes through several paragraphs. And then at the very end, and this is at ER 1741, it says, ladies and gentlemen, Jesus accepts responsibility for what he has done. He asks you to listen carefully to these difficult facts and to hold him responsible for only what the State will be able to prove. But prior to the statement has recounted all of the facts with respect to the charges of burglary, robbery, and conspiracy to commit robbery. And that's why I would agree with Your Honor that I don't think counsel made the most artful closing, but she prefaced her roadmap. She set forth her roadmap at the beginning by stating Flores made a terrible mistake, and he wants you to know this. She stated that he accepts responsibility for what he did, but then she said, the State is charging Jesus with crimes he did not commit. The State alleges that he committed the burglary and robbery while in possession of a gun or a knife. The facts will not support this. And the State alleges that he committed first degree kidnapping. The facts will not support this. So she could have left out all the facts, and she could have concluded by saying, ladies and gentlemen, he accepts responsibility for what he done. He asked you to listen carefully to the difficult facts and to hold him responsible only for what the State will be able to prove. And again, like I say, it was an inartful, but it's certainly not evidence. Because at that point, there was no evidence presented. So I would say that this is not... And I asked, I was asking your opposing counsel some questions about whether this could be read as saying, here's what the witnesses will say, but not actually as conceding it. But you didn't really make that argument in your brief. So should we, for these purposes, assume that she really did concede all these facts? I think you can read it that way, Your Honor. But again, I don't think it matters in the grand scheme of things, because based on this, there's not total abandonment. Based on what she did during trial, you don't have total abandonment. She vigorously... And I'm going to say vigorously conceding to Judge Mendoza's point that you're not going to beat up a witness or a witness on a stand if you're a defense attorney. You're not going to re-victimize a victim, because that's going to defeat what she's trying to accomplish at this point. And she stated that during the canvas. She said she wanted to try to preserve credibility. She wanted to try to defend what she could defend. And the district court also pointed out... I'm sorry. I'm not sure I understood the answer. So are you saying we should assume that what she meant was to concede these facts, including that there was a gun involved in this crime? No. Because I think getting to what you said at that point, she said you're going to hear evidence about a gun, but she then argues later on about the gun. She cross-examined the victim about whether there was a gun. In fact, she took particular issue with the point that he said for the first time during trial that at one point he saw Mr. Martinez hand the gun to Mr. Flores and Mr. Flores hand a knife to Mr. Martinez. And she pointed out the fact... And she went into a little bit of detail, and I would say gingerly, because didn't she give a statement to law enforcement that night? Didn't mention that. Didn't she give testimony at a preliminary hearing 14 days later? And again, that wasn't there. So she was pointing out inconsistencies, not to the fact that she was trying to hammer his credibility, because that wouldn't gain credibility necessarily with a jury, or at least with all members of a jury, in a case which having some type of credibility and having some type of respect was going to be critical. And I think, again, that was one of the facts. And I guess I should have answered your question a little bit more directly, and I apologize, but I think that specific point she prefaced, you're going to hear testimony about it. I'm not saying that that necessarily is true. Then she went into a little bit more of a narrative with the facts, where she didn't preface everything with, you're going to hear. And again, without being able to climb into defense counsel's mind, I think you can... That's why I say, I think you can read it one way or the other, but I think the better reading is to give her words meaning. And so she emphasized, you're going to hear, when maybe she didn't believe the facts that were there. So, am I right, though, that you didn't make this argument in your brief? I didn't make the argument in the brief because my argument is, number one, chronic doesn't apply. There was no total abandonment. Number two, this gets applied, this gets reviewed under ad pediferance. The state Supreme Court ruling receives the deference that it's entitled to. And the state Supreme Court was correct that in this case, even if there was error, it wasn't prejudicial because Mr. Flores had just about every type of evidence against him that you can think of. There was testimony of a victim. There was eyewitness identification based on unique factors of Mr. Flores, and those were his tattoos. And he made a point of that during when he was taken out to the crime scene, or to where Mr. Flores, Mr. Rodriguez, and Mr. Martinez were apprehended. And he readily recognized Martinez and Rodriguez, and that might make sense because while Flores was gone for 45 minutes, he had time to look and observe at them. But when it came to Mr. Flores, who wasn't there that full time, he needed him to come closer, and he identified him by the tattoos. On top of having the unique tattoos, he was wearing the victim's jacket when law enforcement caught him. On top of that, there were plenty of ATM video and photographs showing Mr. Flores driving around and stopping at all the ATMs and trying to draw money out. And then finally, you had his DNA evidence in the form of his DNA was found on one of the things that was used to bind the victim in this case, Mr. Bester. Counsel did the best they could, but there was no total abandonment. And again, pointing in Swanson, counsel, that was total abandonment. After all the evidence was in, he said, state one, ladies and gentlemen, I'm not going to insult your intelligence. You don't need to go in to deliberate. You don't have that here. You don't even have that in chronic where the Supreme Court sent the case back for further fact finding. You don't have it in Florida versus Nixon where the Supreme Court refused to apply chronic like the Florida Supreme Court did and found that trial counsel fought for him. Because this was still a trial. The state had to prove their case. The state had to admit evidence. Counsel got to cross-examine the evidence. Counsel got to move to not admit evidence that could have been improper. You had a trial here. You had a person defending them as vigorously as they could. But you had basically an unwinnable case. This was as close to being caught in the act as you could. Not only that, but again, you had a defendant who had their face exposed at numerous ATMs. You had a defendant whose DNA was found at the scene. You had three defendants whose father of one of the co-defendants turned the computer that was taken into law enforcement. I can't think of a case with more overwhelming evidence of guilt unless you're like caught red-handed or there's video on you from start to finish. So finding that there was no total abandonment under chronic, the Nevada Supreme Court's decision in this case can't be objectively unreasonable under these facts. And if there's no question, further questions, Your Honor, I would ask you to affirm the district court in this matter. Thank you. Just two main points, Your Honor. I'm glad that opposing counsel conceded that trial counsel made errors. And I guess to my point that the Nevada Supreme Court's decision does not need to add pedeference because it was contrary to established Supreme Court precedents. The Nevada Supreme Court stated Mr. Flores can't blame counsel because he was canvassed and he consented. But Nevada Supreme Court precedent has made clear, such as Hill v. Lockhart, that erroneous legal advice can be — doesn't excuse deficient performance. The Nevada Supreme Court's decision was also an unravelable determination of facts. Regardless of what he was canvassed on, Mr. Flores certainly didn't consent to the factual concessions. He didn't concede there was a gun. He didn't concede that — he didn't consent to co-defendant Martinez threatening the victims. He didn't consent to him — trial counsel admitting that he tied up the victim. So this Court can't review this case in Nevada because the Nevada Supreme Court's decision was both contrary to established Supreme Court precedent and unreasonable determination of facts under D1 and D2. Second point, just quickly. This is a chronic violation because there was both a — a total abandonment of counsel during a critical proceeding. Chronic does not require a total abandonment of the client throughout the entire case, right? You can just screw up at a very particular point and screw up very, very badly, and that's what counsel did. Counsel did not submit this case to meaningful adversarial testing because she conceded all the facts needed. And with that, Your Honor, we request that writ be granted and Mr. — Mr. Flores be given a second trial. Thank you. Thank you, both sides, for the helpful arguments. This case is submitted.
judges: FRIEDLAND, MENDOZA, DESAI